Filed 9/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WERTHEIM, LLC, | B262485 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BC441026, BC444248) |
| v. | |
| PARVIZ OMIDVAR, et al. | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge. Affirmed.

Diem Law and Robin L. Diem for Defendants and Appellants.

The Newell Law Firm, Felton T. Newell, Jr.; Broedlow Lewis, Jeffrey Lewis and Kelly B. Dunagan for Plaintiff and Respondent.

_____

When the superior court entered judgment confirming a $672,122 arbitration award against a lender in favor of a borrower's assignee, the lender appealed the judgment while the assignee attempted to enforce it by levying the lender's debtors. As a result of the enforcement efforts, the debtors interpleaded several million dollars and were discharged by the court and awarded $238,615.45 in attorney fees paid out of the deposited funds.

We ultimately reversed the underlying judgment, after which the superior court released all deposited funds to the lender. The lender then moved to recoup the already-paid attorney fees from the borrower's assignee. In support of and opposition to the lender's motion, each party contended the other's litigation tactics drove up the debtors' attorney fees. The trial court entered an order denying the lender's motion, which the lender now appeals.

We conclude the record supports the order.

## BACKGROUND

This is the latest of many appeals involving these parties. Parviz Omidvar and his relatives and companies, including Currency Corporation (collectively Currency), loaned money at high interest rates to elderly artists who owned rights to receive royalty payments from music rights management companies such as Broadcast Music Inc. and the American Society of Composers, Authors and Publishers (the royalty payors). The artists assigned their royalty rights to Currency in exchange for the loans. Currency made dozens of such loans to Maibell Page, the widow of Eugene Page, a successful songwriter, who in exchange assigned her royalty rights to Currency.

In 2006, David Pullman, the owner of Wertheim, LLC and founder and CEO of Structured Asset Sales, LLC (collectively Wertheim), persuaded Page and many other artists to assign to him their royalty rights and any causes of action they might have against Currency. Wertheim and Currency then began a multi-front legal feud over the assigned royalty streams, each contending the other preys on the gullible elderly. (E.g., *Currency Corp. v. Wertheim* (May 20, 2011, B222851 [nonpub. opn.]).)

2

As pertinent here, in one of the many proceedings Wertheim obtained a $672,122 arbitration award against Currency, which the superior court confirmed. Currency appealed the resulting judgment while Wertheim attempted to enforce it by diverting to itself the royalty payments that the royalty payors were making to Currency. These entities filed interpleader actions and deposited disputed funds with the superior court, after which they were discharged and awarded $238,615.45 in attorney fees, which was paid out of the deposited funds.

In 2013, we reversed the judgment confirming Wertheim's arbitration award on the ground that the arbitrators had exceeded their authority. (*Currency Corp. v. Wertheim* (Sept. 30, 2013, B240444 [nonpub. opn.]).) In that ruling, we observed that both Currency and Wertheim "admitted to conduct that amounts to breach of fiduciary duty and financial elder abuse. Indeed, this entire litigation surrounds a three-sided effort to separate Maibell Page, an ill, incompetent senior, from her main source of income. Currency admitted during the arbitration hearing that it extended loans to Maibell after she suffered a stroke and became unable to understand the loan terms, failed and was unable to account for the money it took from her, and retained her money without just cause. (It offered to return the money at the hearing.) . . . And Wertheim admitted it extracted financial agreements from 'an unsuspecting elderly widow with short term memory loss, who had been institutionalized for mental illness.' And all of the agreements were unconscionable. All were written in visually dense, incomprehensible language, heavily favored their authors, and were obtained under conditions of undue influence. Currency made purportedly commercial 'loans' to Maibell—some for under $100—at 107 percent annual interest—charged at its own undisclosed discretion—while keeping no records. Wertheim bought a royalty stream from her, worth approximately $50,000 per year, for $1,000." (*Ibid.*, fn. omitted.)

Wertheim's judgment against Currency now having been vacated, the superior court in the interpleader proceedings released all deposited funds to Currency. Currency then moved to recoup from Wertheim the $238,615.45 in attorney fees that had been paid to the royalty payors, contending all or most of those entities' fees were incurred as a

result of Wertheim's litigation tactics. In opposition to the motion, Wertheim contended the fees were incurred as a result of Currency's litigation tactics.

Before hearing the matter, the superior court issued a tentative ruling in which it found no merit to either side's argument. After the hearing, the court issued an order denying Currency's motion without explanation. Three weeks later, the court issued a clarification in which it stated, among other things, that it had considered and understood Currency's position.

Currency appeals the order denying its motion for attorney fees.

## DISCUSSION

Currency contends the trial court erred as a matter of law in declining to allocate some or all of the interpleading parties' attorney fees to Wertheim, as the record establishes Wertheim caused those parties to incur the fees. We disagree.

Any person or entity against whom incompatible claims are made by two or more persons may bring an action in interpleader against the claimants to compel them to litigate their claims. (Code Civ. Proc., § 386.) That person or entity may in the court's discretion be awarded costs and reasonable attorney fees incurred in bringing the interpleader action and obtaining discharge. Then, "[a]t the time of final judgment in the action the court may make such further provision for assumption of such costs and attorney fees by one or more of the adverse claimants as may appear proper." (Code Civ. Proc., § 386.6.) Our review is for abuse of discretion. (*Fritschi v. Teed* (1963) 213 Cal.App.2d 718, 728.)

Here, by denying Currency's motion to allocate the interpleading parties' fees, the trial court impliedly found it proper that Currency assume those fees. We perceive no abuse of discretion. At the time the interpleader action was initiated and funds deposited, Wertheim had a colorable claim on the funds in the form of a judgment confirming a $672,122 arbitration award. Had Currency paid the judgment or posted a bond during the pendency of its appeal there would have been no interpleader action. When it prevailed in the end and was awarded all deposited funds, the trial court could reasonably find it proper that the party that necessitated the interpleader action pay for it.

4

Currency argues the trial court abused its discretion by misunderstanding and failing to exercise it. The argument is without merit because nothing in the trial court's order, which simply denied Currency's fees motion without explanation, suggests the court misunderstood or failed to exercise its discretion. On appeal a trial court's order "is presumed correct. Error must be affirmatively shown." (*People v. Beardslee* (1991) 53 Cal.3d 68, 100.) The record's silence here reveals no error.

Currency argues the trial court's order "strongly suggests" the court was convinced by an erroneous argument Wertheim's counsel pressed at the fees hearing. Currency proceeds at some length to discuss the erroneous argument but we need not do so here because we reject the premise: Nothing about a facially proper order implies the court relied on an erroneous argument to reach the order.

Currency argues equity requires that Wertheim pay at least some of the interpleading parties' attorney fees because it drove up the costs of litigation. The argument is without merit. Although equity certainly would have countenanced Wertheim paying at least some of the fees, equity does not demand that it do so. As stated, Wertheim had a colorable claim on the interpleaded funds in the form of a judgment, and Currency could have avoided the interpleader action by paying the judgment. The trial court therefore acted within its discretion in finding it "proper" for Currency to pay the attorney fees.

## DISPOSITION

The order denying Currency's motion for fees is affirmed. Each side is to bear its own costs on appeal.

TO BE PUBLISHED.


CHANEY, Acting P. J.

WE CONCUR:

JOHNSON, J.


LUI, J.

5