Filed 12/27/21

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WILLIAM E. RICE, | B307780 |
| Plaintiff, | (Los Angeles County Super. Ct. Nos. BC506921, BC619678) |
| v. | |
| GARY P. DOWNS, | |
| Defendant and Respondent; | |
| GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO, LLP, | |
| Appellant. | |

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication, with the exception of part B.2 of the Discussion.

APPEAL from an order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Reversed and remanded with directions.

No appearance by Plaintiff.

Glaser Weil Fink Howard Avchen & Shapiro, Michael Cypers and Elizabeth G. Chilton for Appellant.

Shaw Koepke & Satter, Jens B. Koepke and Anne M. Huarte for Defendant and Respondent.

_____

Appellant Glaser Weil Fink Howard Avchen & Shapiro, LLC (Glaser Weil), former counsel of plaintiff William Rice, appeals from an order disgorging a $450,000 payment to Glaser Weil by Triton Community Development LLC (Triton), an entity owned and controlled by Rice.  The trial court concluded the payment should instead have gone to defendant and respondent Gary Downs, who had obtained an order charging Rice's interest in Triton to satisfy an earlier judgment entered in Downs' favor.[1]

In contesting disgorgement, Rice and Glaser Weil asserted that before Downs had moved for the charging order, Glaser Weil had entered into agreements with Triton and Rice to ensure payment of Glaser Weil's legal fees, and those agreements took precedence over the charging order.  Specifically, Triton had agreed to become co-obligor on Rice's debt to Glaser Weil, and Rice had also pledged his interest in Triton to Glaser Weil as security on his debt.  Although Rice and Glaser Weil did not provide these agreements to the trial court, Rice and a Glaser

_____

[1] This is the third appeal taken in this lawsuit.  The first two concerned the arbitrability of Rice's causes of action.  Rice is not a party to this appeal.

2

Weil partner submitted declarations attesting to the agreements, along with a Uniform Commercial Code (UCC) financing statement filed with the Secretary of State referencing, among other things, Glaser Weil's security interest in Triton.

Glaser Weil argued that Triton made the $450,000 payment for its own obligations as co-obligor on Rice's debt, and therefore the payment was not a "distribution" to Rice subject to the charging order. Alternatively, if the payment was a distribution to Rice, Glaser Weil contended its security interest, perfected before Downs moved for his charging order, had priority over that order.

The trial court found that Triton was Rice's alter ego, and rejected the argument that the payment was for Triton's obligation as opposed to Rice's debt. The court agreed in theory with Glaser Weil's lien priority argument, but relied on its equitable authority to place the charging order ahead of Glaser Weil's security interest.

Like the trial court, we conclude that when Rice, as sole managing member of Triton, directed the company to disburse funds to pay his legal bills, it constituted a distribution to him subject to the charging order.

We disagree with the trial court on the lien priority question, however, and hold that Glaser Weil's security agreement, perfected by the filing of a financing statement, has priority over the later charging order. In the unpublished portion of the opinion, we further conclude there was no equitable basis to override Glaser Weil's lien priority here, assuming arguendo a trial court can override a statutory lien priority by exercising its equitable power.

Because the trial court resolved the lien priority question under its equitable authority, preferencing the charging order regardless of whatever security interest Glaser Weil may have, the court never made any factual findings as to the terms of the security interest, including, among other issues, whether it entitled Glaser Weil to the same property covered by the charging order. We therefore reverse the disgorgement order and remand for the trial court to make those findings in the first instance.

## PROCEDURAL BACKGROUND

### 1. *Downs' judgment against Rice*

As alleged in Rice's original complaint filed in this action, Downs was Rice's attorney. Rice and Downs joined with Kristopher Kaufmann to form a company to develop affordable housing. Problems arose, and Rice ultimately sued Downs for legal malpractice, breach of fiduciary duty, breach of contract, unjust enrichment, and rescission and restitution.

Downs successfully moved to compel arbitration of Rice's complaint, which Rice then refiled as a cross-claim in an existing arbitration initiated by Downs and Kaufmann. The arbitrator issued an award that, as relevant here, obliged Rice to pay Downs hundreds of thousands of dollars in attorney fees and costs. On June 1, 2015, the trial court entered judgment confirming the arbitration award with modifications not relevant to this appeal, and awarded Downs additional fees and costs incurred in obtaining that judgment.

Rice and Downs both appealed. We held that the trial court erred by compelling arbitration of Rice's claims for legal malpractice, breach of fiduciary duty, and rescission, but otherwise affirmed the judgment. (*Rice v. Downs* (2016)

4

248 Cal.App.4th 175, 179–180, 197 (*Rice I*).) The parties do not dispute that our decision in *Rice I* implicitly affirmed the judgment's award of fees and costs to Downs, an award that Rice did not challenge in *Rice I*.

## 2. *The charging order*

*Rice I* having revived Rice's tort claims, the litigation proceeded. In June 2017, Rice filed a first amended complaint adding allegations related to transactions in Hawaii involving Rice and Downs. Downs moved to compel arbitration of Rice's claims to the extent they arose from the new Hawaii allegations. The trial court denied the motion, and Downs appealed. We will refer to that appeal as *Rice II*.

In the trial court, the parties disputed the scope of the automatic stay triggered by the pending *Rice II* appeal under Code of Civil Procedure section 916. Rice contended the stay affected only his new Hawaii-based claims, the subject of Downs' motion to compel arbitration, and the action otherwise should proceed. Downs argued his appeal stayed the entire case. The trial court agreed with Downs, and on January 30, 2018, issued an order stating that "the entire action is stayed from proceeding on the merits until the remittitur is issued."

Several months later, while *Rice II* was still pending, Downs took action to enforce the June 1, 2015, judgment. Specifically, on April 11, 2018, Downs moved for a charging order directing various limited liability companies (LLCs) of which Rice was a member to pay any distributions to which Rice was entitled directly to Downs until the judgment was satisfied. Among the listed companies was Triton, a company of which Rice was founder and sole managing member.

5

On June 19, 2018, the trial court denied Downs' motion for a charging order, finding that the January 30 order staying the entire litigation pending appeal applied to Downs' attempt to enforce the judgment. The judge who denied the motion, Judge Moreton, was not the same judge who issued the January 30 stay order, Judge Palazuelos. Downs filed an ex parte application requesting that Judge Palazuelos clarify that the January 30 order did not apply to efforts to collect the June 1, 2015, judgment. Judge Palazuelos denied the request.

We issued our opinion in *Rice II* in July 2019, affirming the denial of Downs' motion to compel arbitration. (*Rice v. Downs* (July 23, 2019, B286296) [nonpub. opn.].) The remittitur was issued on September 23, 2019.

On October 3, 2019, Downs again moved for a charging order seeking to charge Rice's interest in several LLCs, including Triton. The trial court granted the motion on October 30, 2019, ordering that Rice's interest in the companies was "charged with the unpaid balance of the [June 1, 2015,] judgment," and the companies "shall pay any money or property due or to become due to [Rice] directly to [Downs] until the amount remaining due on the judgment, plus all accrued interest and costs thereon, is paid in full."

### 3. *Motion to enforce the charging order*

Rice filed for Chapter 11 bankruptcy on January 27, 2020. During that proceeding, he filed a monthly operating report disclosing that in February 2020, Triton had paid $450,000 to Glaser Weil, the firm representing Rice in his litigation against Downs.

The bankruptcy court dismissed Rice's case on April 14, 2020, finding that "in the interest of judicial economy, the parties should continue to litigate in state court."

On May 1, 2020, Downs moved in the trial court to enforce the charging order, contending that Triton's $450,000 payment to Glaser Weil violated the order. Downs proposed three alternative remedies: first, that Rice reimburse Triton the $450,000; second, that Rice pay Downs $450,000 directly from his personal account; or third, that the trial court order the $450,000 disgorged from Glaser Weil and given to Downs.

Downs' motion also sought to recover $75,000 loaned by Triton to pay Rice's bankruptcy counsel, and $45,000 transferred from Triton directly to Rice. Those payments are not at issue in this appeal.

### 4.    *Rice's opposition*

In opposition to Downs' enforcement motion, Rice contended that months before Downs moved for the charging order in October 2019, Triton had entered into an agreement with Glaser Weil under which Triton became a co-obligor on Rice's debt to the law firm. The payment to Glaser Weil thus was not a distribution to Rice subject to the charging order, but rather "a payment made by Triton to satisfy its own debt" as co-obligor on Rice's debt.

Rice further argued that even if Triton's payment could be considered a distribution due to Rice, Glaser Weil had a "perfected security interest in those funds which was senior to Downs' lien arising from the charging order." Specifically, Rice contended that on the same date that Triton became co-obligor on Rice's debt to Glaser Weil, Rice also granted Glaser Weil a security interest in his membership in Triton, and Glaser Weil

7

perfected that interest by filing a UCC financing statement with the Secretary of State.  Rice claimed this all took place before Downs obtained his October 2019 charging order.

In support of this contention, Rice filed a declaration asserting that on June 27, 2019, Triton entered into an agreement with Glaser Weil "under which Triton became a co-obligor with [Rice] for past and future fees charged by the firm for its services in certain judicial and arbitration proceedings including the actions in the California Superior Court for the County of Los Angeles captioned *William E. Rice v. Gary P. Downs et al.*, Case No. BC506921 and *William E. Rice v. Gary P. Downs et al.*, Case No. BC619678, the arbitration proceedings before JAMS captioned *Kaufmann v. Rice*, et al, JAMS Ref No. 120048799, and related confirmation, vacatur and appellate proceedings (collectively, the 'Legal Proceedings')."  Rice claimed the $450,000 payment was "pursuant to the obligation [Triton] had undertaken to Glaser Weil . . . in partial payment for legal services that had previously been rendered by Glaser Weil in the Legal Proceedings."

Rice further asserted that on June 27, 2019, he and Glaser Weil also entered into a "Pledge and Security Agreement" to "secure [Rice's] obligation to pay Glaser Weil for its past and future services in the Legal Proceedings."  The agreement "granted Glaser Weil a security interest in all distributions due to [Rice] from Triton."

A declaration filed by Michael Cypers, a Glaser Weil partner, echoed Rice's assertions concerning the pledge and security agreement, and stated the agreement "granted Glaser Weil a security interest in, among other things, Rice's

8

membership interest in Triton and Rice's right to receive moneys or distributions from Triton."

The agreement between Triton and Glaser Weil and the pledge and security agreement between Rice and Glaser Weil were not attached to Rice's or Cypers's declarations. Those agreements do not appear in the appellate record, and there is no indication they were ever provided to the trial court.

Attached to Cypers' declaration, however, was a UCC financing statement filed by Glaser Weil with the Secretary of State on July 15, 2019. The statement identified Rice as debtor and Glaser Weil as the secured party. Exhibit A to the financing statement described the collateral securing Rice's debt to Glaser Weil. The collateral included, inter alia, "All of Debtor's right, title and interest in the property described in that certain Pledge and Security Agreement dated June 27, 2019," and "100% of Debtor's membership interests in Triton Community Development LLC, a California limited liability company, together with the certificates (if any) evidencing the same . . . ."[2]

_____

[2] The full description of the collateral is as follows: "All of Debtor's right, title and interest in the property described in that certain Pledge and Security Agreement dated June 27, 2019, by Debtor, as pledgor, for the benefit of the Secured Party ('Pledge and Security Agreement'), whether now owned by Debtor or hereafter acquired and whether now existing or hereafter coming into existence; 100% of Debtor's membership interests in Triton Community Development LLC, a California limited liability company, together with the certificates (if any) evidencing the same; All ownership interests, membership interests, shares, securities, moneys, instruments or property representing a dividend, a distribution or return of capital upon or in respect of the Pledged Interests, or otherwise received in exchange therefor, and any warrants, rights or options issued to the holders of, or

9

In reply, Downs argued that Triton's payment to Glaser Weil was for legal services provided to Rice, not Triton, and thus was effectively a distribution to Rice subject to the charging order. Downs offered numerous arguments as to why Glaser Weil's security interest did not take priority over the charging order. He argued the security interest had no effect absent a default, and "[n]o party is alleging a default here." He contended that his first motion for a charging order filed in April 2018 created a lien that took precedence over Glaser Weil's July 2019

otherwise in respect of, the Pledged Interests; All rights of Debtor under the Relevant Documents or any other agreement or instrument relating to the Pledged Interests, including, without limitation, (i) all rights of Debtor to receive moneys or distributions with respect to the Pledged Interests due and to become due under or pursuant to the Relevant Documents, (ii) all rights of Debtor to receive proceeds of any indemnity, warranty or guaranty with respect to the Pledged Interests, (iii) all claims of Debtor for damages arising out of or for breach of or default under a Relevant Document, and (iv) any right of Debtor to perform thereunder and to compel performance and otherwise exercise all rights and remedies thereunder; and all proceeds of and to any of the property of Debtor described herein and in that certain Pledge and Security Agreement and, to the extent documenting any property described in said clauses or such proceeds, all books, correspondence, credit files, records, invoices and other papers. [¶] All Current Fees plus interest, all Costs plus interest and all Deferred Fees plus interest as defined in that certain Engagement Letter dated April 18, 2014, December 10, 2014, June 4, 2015, May 2, 2017 and June 27, 2019, by and between Debtor and Secured Party, as amended and modified (collectively 'Engagement Letter'). [¶] All terms made here but not defined shall have the meaning given to such terms in the Pledge and Security Agreement and the Engagement Letter."

financing statement. He further argued Glaser Weil's security interest was unenforceable because the $450,000 payment had nothing to do with Triton's obligations to Glaser Weil and Glaser Weil had provided no value to Triton. He complained that Glaser Weil and Rice had given Downs no notice of the lien, and argued the payment by Triton "appears to be a fraudulent conveyance specifically designed to circumvent the Charging Order." Downs also contended "it would be highly inequitable to allow Rice to use Triton to evade the Charging Order, since Triton is Rice's alter ego."

### 5. *Hearings on the enforcement motion*

Downs' enforcement motion was heard on June 25, 2020. The trial court provided an oral tentative ruling granting the motion, stating, "[T]he moving papers are well taken." Following argument, the court adopted its tentative ruling and granted the motion "based on the grounds set forth in the moving papers." It ordered Rice and Downs to meet and confer regarding a proposed order.

The parties could not reach agreement on a proposed order by the time of the next hearing on July 9, 2020. The court ordered payment by August 14.

The next hearing addressing the enforcement order was held on August 17, 2020. Downs indicated Rice had yet to pay. Rice represented that he was not defying the court's order, but he simply did not have the funds to pay it. Downs suggested the trial court order Glaser Weil to transfer the $450,000 received from Triton to him. The trial court agreed with this suggestion. Cypers, the Glaser Weil partner representing Rice at the hearing, noted that Glaser Weil was not a party to the litigation, and

11

"[a]ny sort of a disgorgement would require a proceeding." The trial court set an "Evidentiary Hearing" for August 27, 2020.

At the August 27, 2020, hearing, Rice was represented by new counsel, with Glaser Weil specially appearing on its own behalf. Rice's former bankruptcy counsel also specially appeared to contest disgorgement of the $75,000 paid to them. Rice testified under oath that he had asked Glaser Weil to return the $450,000 so he could meet the August 14 payment deadline.

Glaser Weil's argument focused on *MDQ, LLC v. Gilbert, Kelly, Crowley & Jennett LLP* (2019) 32 Cal.App.5th 702 (*MDQ*), a case involving priority between a charging order and a security interest granted by a judgment debtor to his attorneys. (*See id.* at pp. 704–705.) After taking a recess to review the case, the trial court stated, "[I]t does appear that [Glaser Weil] is on the right side of the law with regard to having the priority, even over my charging order. However, I have concerns about the sworn testimony of Mr. Rice, who instructed his former attorney[s] to turn over that money to satisfy the charging order, [and] which . . . did not occur." The trial court noted the conflict between Glaser Weil's interest in collecting fees and the firm's obligation to shield Rice from "the wrath of the court."

The court rejected arguments from Rice's former bankruptcy counsel that the charging order did not reach funds expended by Triton for its own operations, such as Triton's $75,000 loan to pay bankruptcy counsel. The court stated, "[W]e're not going to play with semantics with Triton being separate from Mr. Rice. Legally, yeah. But if it doesn't scream of alter ego and one and the same, I don't know what does." While acknowledging that the rules providing for the creation of LLCs "are designed to help protect, generally, individual liability,"

12

"those things are not to be abused to avoid being accountable for your liability." The court continued, "Especially when . . . [Rice] is Triton. Triton isn't anything but Mr. Rice."

After further argument, the trial court ruled in Downs' favor. The court found *MDQ* "distinguishable," and stated that "under my equitable exercise of jurisdiction, it would be unfair to allow [the money] to pass hands as it did and for—forgive my vernacular again—for the Glaser firm to tell Mr. Rice, 'Pound sand. I got the money now. We perfected our lien. You have to figure out something else.' [¶] I do find it significant that, in particular with the Glaser firm, the way Mr. Rice testified, under oath, that he asked the firm to render that money to satisfy my charging order."

## 6.     *The trial court's written order*

Following the August 27, 2020, hearing, the trial court issued a written order. It found that Triton was "100% owned and operated by Rice," and "amend[ed the] charging order to make Triton jointly and severally liable [for] the monies owed to Downs." In so doing, the court cited its equitable authority under Code of Civil Procedure section 187 " 'to amend a judgment to add an alter ego of an original judgment debtor, and thereby make the additional judgment debtor liable on the judgment.['] "

The trial court stated, "Rice had the ability to fulfill the charging order in favor of Downs but deliberately chose not to. The Court further finds after examining Rice under oath, that he directed, in particular, the Glaser firm to return the $450,000 disbursement so that he could satisfy the charging order."

The trial court found "[t]he disbursements from Triton to the law firms should have never occurred" and "were a windfall in light of a valid order from this Court that the monies should

13

have been used to satisfy that charging order." The court declared that its "jurisdiction cannot be sanitized by moving monies subject to an order to alleged non-parties like the law firms."

Addressing Glaser Weil's argument based on *MDQ* that its security interest had priority over the charging order, the trial court stated, "Theoretically the Glaser firm is correct and the Court agrees with the analysis." The court nevertheless found that Downs' original unsuccessful motion for a charging order filed on April 11, 2018 created a lien under Code of Civil Procedure section 708.320. Thus, "[u]nder the very analysis applied by the Glaser firm, Downs has priority pursuant to [Code of Civil Procedure section] 708.320. Nevertheless, for the reasons stated above, the Court distinguishes *MDQ* and the instant case on the issue of which party perfected its lien first. The Court finds the disbursements were improper and in contravention of the Court's charging order in favor of Downs."

The trial court ordered Glaser Weil to pay Downs $450,000. Glaser Weil timely appealed.

On September 2, 2020, Downs filed with the Secretary of State a notice of judgment lien on the June 2015 judgment against Rice.

## DISCUSSION

On appeal, Glaser Weil repeats two arguments raised below. First, it contends that Triton's $450,000 payment did not constitute a distribution to Rice subject to the charging order. Second, assuming the payment did constitute a distribution, Glaser Weil argues it had a security interest in Rice's distributions from Triton, and that security interest had priority over the charging order.

14

Glaser Weil's arguments implicate both the trial court's factual findings and legal conclusions. "[W]e review the court's implied and express factual findings for substantial evidence, and review its statutory interpretation independently." (*Benninghoff v. Superior Court* (2006) 136 Cal.App.4th 61, 66.) We review the trial court's exercise of its equitable authority for abuse of discretion. (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1132.)

## A.    The Payment Was a Distribution Subject to the Charging Order

For the reasons that follow, we reject Glaser Weil's position that the $450,000 payment was not a distribution subject to the charging order.

When a "money judgment is rendered against" a member of an LLC, but not against the LLC itself, the member's interest in the LLC "may be applied toward the satisfaction of the judgment by an order charging the judgment debtor's interest pursuant to Section . . . 17705.03 of the Corporations Code." (Code Civ. Proc.,[3] § 708.310.)

Corporations Code section 17705.03, subdivision (a), empowers a court to "enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment. A charging order constitutes a lien on a judgment debtor's transferable interest and requires the limited liability company to pay over to the person to which the charging order was issued any distribution that would otherwise be paid to the judgment debtor."

---

[3] Unspecified statutory citations are to the Code of Civil Procedure.

15

As used in Corporations Code section 17705.03, a "transferable interest" is "the right, as originally associated with a person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement, whether or not the person remains a member or continues to own any part of the right."  (Corp. Code, § 17701.02, subd. (aa).)  A "distribution" is "a transfer of money or other property from a limited liability company to another person on account of a transferable interest."  (*Id.*, subd. (f).)

Glaser Weil argues that under this language, a charging order "is not a net thrown over any and all money or property due or payable from the LLC to the judgment debtor."  Rather, the charging order reaches "only that money or property due or payable . . . **as a distribution pursuant to the LLC's operating agreement**."  Glaser Weil notes that "Downs did not proffer Triton's operating agreement or its books and records (or any other evidence) to establish that the payment was a distribution to Rice and thus subject to a charging order." Nor, contends Glaser Weil, did Downs prove the payment was not for Triton's own expenses as co-obligor on Rice's debt.

By emphasizing the statutory language referring to the LLC's operating agreement, Glaser Weil appears to be limiting the reach of a charging order to distributions formalized under that agreement, such as dividends or other entitlements granted to members.  This narrow reading disregards the reality that many LLCs, like Triton, are completely controlled by a single person who may distribute funds at his or her discretion.  (See *Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 224 [managing member with "near complete interest" in LLC "effectively has complete control over what [the LLC] does and

16

does not do, including whether it makes any disbursements to its members"].) Under Glaser Weil's interpretation, such entities easily could evade charging orders by eschewing formal distributions and instead taking funds out of the LLC as the need arose.

The language of the applicable statutes does not compel this result. Again, a charging order is against an LLC's member's "transferable interest," defined as "the right, as originally associated with a person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement . . . ." (Corp. Code, § 17701.02, subd. (aa).) When a managing member of an LLC directs the LLC to disburse funds for the managing member's own purposes, the managing member does so based on the "right . . . associated with [his or her] capacity as a member," invoking powers "in accordance with the operating agreement." (See *ibid.*) Put another way, the managing member has access to that money only by virtue of his or her status as managing member, just as members have the right to formal distributions by virtue of their status as members.[4] We see no basis to treat the two types of disbursements differently, particularly when doing so would encourage evasion of charging orders.

---

[4] We express no opinion as to how a charging order might affect disbursements made to a member for reasons other than membership, for example if the member were also an employee drawing a salary. Nor do we suggest that a charging order compels a managing member to disburse funds from an LLC, only that when the managing member does so for his or her own purposes, that disbursement is subject to a charging order.

17

Under this analysis, it is clear that had Rice disbursed the $450,000 to himself to pay his legal bills, that disbursement would constitute a distribution. Rice acknowledged in his declaration that he was "the founder and sole Managing Member" of Triton, and the trial court found that Triton was "100% owned and operated by Rice." This evidence supports the trial court's finding that "Rice had the ability to fulfill the charging order in favor of Downs," that is, Rice had full control over Triton's distributions.

The added wrinkle here is that Triton did not disburse the funds to Rice, but instead paid Glaser Weil directly pursuant to an agreement Rice and Glaser Weil claim made Triton jointly and severally liable for Rice's debt. Glaser Weil contends the money therefore was a "payment by Triton of its own expenses."

Even if Triton made the payment pursuant to its own contractual obligation to Glaser Weil, the fact remains that the payment was for Rice's legal expenses. Rice's declaration stated the payment was "pursuant to the obligation [Triton] had undertaken to Glaser Weil," referring to the agreement "under which Triton became a co-obligor with [Rice] for past and future fees charged by the firm." This testimony establishes that Triton paid not because Glaser Weil provided services to Triton, but because Triton had agreed to become "co-obligor" on Rice's obligation.

Thus, although Triton may have been paying for the obligation it had assumed, the result was that Rice personally was relieved of a portion of his debt. The payment effectively was money in Rice's pocket, because anything Triton paid for the legal expenses owed by Rice was something Rice would not have to pay

18

to Glaser Weil. The payment therefore constituted a "distribution" as much as had Rice received the money himself.

Glaser Weil's argument also fails in light of the trial court's conclusion that Triton was Rice's alter ego, a finding Glaser Weil does not contest or even address on appeal.[5] "Under the alter ego doctrine, . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.) At the disgorgement hearing, the trial court referred to this doctrine in rejecting the argument that Triton's payments were for its own expenses and not for Rice's legal fees.[6]

Given its unchallenged finding that Triton was Rice's alter ego, the trial court could look past the corporate formalities and deem the transaction as Rice distributing money to himself from Triton to pay his legal bills. The fact that as a technical matter it was Triton that made the payment pursuant to its own purported

---

[5] Because Glaser Weil does not challenge the alter ego finding, we need not determine whether the finding was supported by substantial evidence. (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1136 [issue not raised in appellate briefing forfeited].)

[6] The trial court's comments were directed to Rice's former bankruptcy counsel's argument that Triton's loan to pay their fees was a Triton expense, but the reasoning applies equally to Triton's payment to Glaser Weil.

obligations was immaterial because Triton and Rice were effectively one and the same.

Glaser Weil contends that the trial court in fact found Triton was jointly and severally liable for Rice's legal bills, thus "siding with Glaser Weil on the issue of whether Triton was paying its own expenses." As we have explained, even if Triton was "paying its own expenses" in the sense of satisfying its obligation as co-obligor on Rice's debt, that disbursement would still constitute a distribution to Rice.

Glaser Weil, moreover, reads too much into an offhand comment by the trial court as it was wrapping up the disgorgement hearing. After the trial court orally announced its ruling, it invited "any final comments for your record and objections on the record." During the subsequent colloquy, Cypers of Glaser Weil stated, "The other point that I'd like to make at this point is Triton is and was a client of Glaser Weil and charging—I should say the U.C.C.-1 [financing statement] goes to Bill Rice's interest in Triton. [¶] So I think that's already part of the record and I just wanted to make sure that—that it is, that Triton and Mr. Rice are jointly and severally liable for the fees to our law firm."

The trial court responded, "Absolutely. I mean, I imagine one day you will get paid. Just not going to get paid today. Mr. Downs needs to have his judgment satisfied. [¶] And I'll be the first one to say of course, Mr. Cypers has earned his money. Of course the firm needs to be paid. If you end up coming back in here and Mr. Rice is saying he doesn't want to pay you, I'll be the first one saying, 'Oh, no you don't.' [¶] So I'm not in dispute with you on that issue."

20

Glaser Weil argues the trial court's comments indicate "[t]he trial court found that Triton was 'absolutely' jointly and severally liable with Rice for Glaser Weil's fees." We reject this reading. The trial court's comments immediately following its "Absolutely" remark all pertain to whether Glaser Weil earned its fees and deserved to get paid, suggesting that it was addressing nothing more than that issue. It said nothing about Triton or joint and several liability, and the court certainly did not indicate that it found that Triton had paid the $450,000 for its own expenses. As noted, earlier in the hearing the trial court had expressly rejected arguments that Triton's payments for Rice's legal bills constituted expenditures for Triton's own operations. Thus, Glaser Weil's strained interpretation of the trial court's comment is unpersuasive.

## B. Glaser Weil's Security Interest Has Priority Over the Charging Order, But Remand Is Necessary To Determine the Terms of That Security Interest

Turning to Glaser Weil's second argument, we agree that Glaser Weil's security interest, perfected by filing the financing statement with the Secretary of State, has priority over the charging order that Downs later requested and obtained. We further agree there was no equitable basis for the trial court to override that priority. We therefore reverse the disgorgement order. Remand is necessary, however, for the trial court to determine the terms of Glaser Weil's security interest. The trial court has yet to make this determination, having instead relied on its equitable authority to place the charging order ahead of Glaser Weil's security interest.

### 1. Glaser Weil's security interest takes priority over the charging order

The first question we must address is how priority is determined between a charging order and a competing perfected security interest. For purposes of this subpart of our Discussion, we assume arguendo that Glaser Weil's security interest is in the same property covered by the charging order, namely Rice's distributions from Triton, an issue the trial court has yet to determine.

"Other things being equal, different liens upon the same property have priority according to the time of their creation . . . ." (Civ. Code, § 2897.) Numerous statutes apply this general first-in-time principle to specific types of liens or security interests. For example, Commercial Code section 9322 governs priorities between competing security interests, ranking them "according to priority in time of filing or perfection." (Com. Code, § 9322, subd. (a)(1).) Similarly, Code of Civil Procedure section 697.590 governs priorities between judgment liens on personal property and security interests in the same property, ranking those interests "according to priority in time of filing or perfection." (§ 697.590, subd. (b).)

We have not found, nor have the parties identified, a statute specifically addressing the priority of charging orders in relation to other liens and security interests. Glaser Weil argues that it "had priority over Downs pursuant to §697.590(b)." Downs also contends that section 697.590 applies, although he believes that statute favors his position.

As Glaser Weil correctly notes elsewhere, however, a charging order is not equivalent to a judgment lien on personal property, the subject of section 697.590. Judgment liens on

22

personal property are created pursuant to section 697.510 by filing a notice with the Secretary of State. (§ 697.510, subd. (a); § 697.590, subd. (a)(1)(A).) Charging order liens, in contrast, are created under section 708.320 "by service of a notice of motion for a charging order . . . ." (§ 708.320, subd. (a).) "If a charging order is issued, the lien . . . continues under the terms of the order. If issuance of the charging order is denied, the lien is extinguished." (*Id.*, subd. (b).)

In the absence of a statute specifically addressing the priority of charging orders, we rely on the general first-in-time rule stated in Civil Code section 2897.[7] (See *Bluxome Street Associates v. Fireman's Fund Ins. Co.* (1988) 206 Cal.App.3d 1149, 1158; cf. Ahart, Cal. Prac. Guide: Enforcement of Judgments and Debts (The Rutter Group 2015) ¶ 6:1472.1 [citing Civil Code section 2897 in support of proposition that "Where judgment creditors have obtained charging order liens on the same interests, priority should be given to the first creditor that obtained a lien"].)

Under this principle, it is evident that Glaser Weil's security interest has priority over Downs' charging order. As stated, the priority of a security interest is determined "according to priority in time of filing or perfection." (Com. Code, § 9322, subd. (a)(1).) A security interest is perfected by filing a financing statement with the Secretary of State. (*Id.*, § 9310, subd. (a); *id.*,

---

[7] Although we rely on Civil Code section 2897 for the first-in-time principle, we do not suggest that general statute overrides more specific statutes dictating that a security interest's priority is based on time of filing or perfection, not time of creation. (See, e.g., Code Civ. Proc., § 697.590, subd. (b); Com. Code, § 9322, subd. (a)(1).)

23

§ 9501, subd. (a)(2); *MDQ*, *supra*, 32 Cal.App.5th at p. 711.) Glaser Weil filed a financing statement with the Secretary of State in July 2019.

Downs obtained his lien several months later, in October 2019, when he served notice of his second motion for a charging order, which motion—in contrast to his first motion— was granted. (§ 708.320, subd. (a).)[8]  Glaser Weil's earlier perfected security interest therefore has priority.

The trial court concluded otherwise, stating that Downs had the senior lien by virtue of serving notice of his first motion for a charging order in April 2018.  This was error, for under section 708.320, subdivision (b), Downs' earlier lien was extinguished when the trial court "denied" "issuance of the charging order" in light of the automatic stay pending appeal. "Priority can exist only if the lien exists." (*Messerall v. Fulwider* (1988) 199 Cal.App.3d 1324, 1330.)

Our conclusion that Glaser Weil's security interest has priority over the charging order is supported by *MDQ*, which to some degree presents the converse of the factual pattern in the instant case.  The underlying litigation in *MDQ* concerned plaintiff Cleopatra Records, Inc. (Cleopatra), and defendant Floyd Mutrux.  (*MDQ*, *supra*, 32 Cal.App.5th at p. 705.)  The trial court issued a proposed statement of decision awarding Cleopatra over a million dollars.  (*Ibid.*)  Shortly thereafter, Mutrux assigned to his attorneys, the law firm of Gilbert, Kelly, Crowley & Jennett

---

[8] We assume without deciding that the priority of a lien under section 708.320 is determined from the time of service of notice of a charging order motion, and that the lien holder need not take any further steps to perfect or otherwise establish the priority of that lien.

LLP (Gilbert Kelly), a portion of his economic interests in four LLCs " '[i]n consideration for legal services provided . . . and to be provided hereafter . . . .' " (*Ibid.*) In the assignment, Mutrux directed the LLCs to make specified percentages of payments due to Mutrux to Gilbert Kelly instead. (*Ibid.*) Gilbert Kelly did not file a UCC financing statement. (*Id.* at p. 707.)

Months later, the trial court entered judgment of just under a million dollars in favor of Cleopatra. (*MDQ, supra*, 32 Cal.App.5th at p. 706.) Cleopatra recorded a judgment lien under section 697.590. (*Id.* at p. 707.) Cleopatra then moved for a charging order against Mutrux's interests in the LLCs, which the trial court granted, directing the LLCs " 'to pay any and all profits, distributions, disbursements or other payments otherwise due to" Mutrux to Cleopatra. (*Id.* at 706.)

The LLCs filed an interpleader action to resolve the competing interests of Cleopatra and Gilbert Kelly. (*MDQ, supra*, 32 Cal.App.5th at p. 706.) The trial court found that because Gilbert Kelly had never filed a financing statement, Cleopatra's judgment lien had priority over Gilbert Kelly's assignment. (*Id.* at p. 707.)

Our colleagues in Division Eight affirmed the trial court's ruling. (*MDQ, supra*, 32 Cal.App.5th at p. 704.) The appellate court rejected Gilbert Kelly's argument that the assignment was not a security interest: "While Gilbert Kelly's assignment may differ from some other secured transactions, in that the collateral securing Mutrux's obligation to Gilbert Kelly is being paid as it accrues to satisfy that obligation, rather than securing payment from another source, Gilbert Kelly offers us no rationale under which we can conclude that it is not a security interest within the

25

meaning of the California Uniform Commercial Code." (*Id.* at p. 710.)

The appellate court further agreed with the trial court that Gilbert Kelly had failed to perfect its security agreement by filing a financing statement. "[B]ecause Gilbert Kelly did not file a financing statement, Cleopatra's judgment lien has 'priority in time of filing or perfection.'" (*MDQ*, *supra*, 32 Cal.App.5th at p. 711, quoting § 697.590, subd. (b).) "Had Gilbert Kelly perfected its security interest, this would be another story, and the charging order could not be applied to that first-in-time, perfected security interest. But Gilbert Kelly did not do so." (*Id.* at p. 712.)

The instant case presents the counterfactual scenario described by the *MDQ* court in these last quoted comments. Like Gilbert Kelly, Glaser Weil obtained a security interest in its client's interest in an LLC prior to the judgment creditor moving for a charging order against that same interest. Unlike Gilbert Kelly, Glaser Weil filed a financing statement before Downs served notice of his second, ultimately successful charging order motion. Accordingly, under *MDQ*, "the charging order c[annot] be applied to that first-in-time, perfected security interest."[9] (*MDQ*, *supra*, 32 Cal.App.5th at p. 712.)

---

[9] We note that in *MDQ*, Cleopatra's priority was determined not by its charging order but by its recorded judgment lien, which predated the charging order. This does not affect our analysis. The significance of *MDQ* for purposes of the instant case is its observation that a charging order would not take precedence over a security interest perfected before any judgment lien or charging order lien was in place.

26

Downs raises a number of arguments as to why his lien should have priority. Downs contends that section 708.320, subdivision (b), which provides, "If issuance of the charging order is denied, the lien is extinguished," should apply only to denials of charging orders on the merits. Accordingly, because Downs' first motion for a charging order in April 2018 was denied on procedural grounds, namely the stay pending appeal, Downs argues the lien created by service of that motion was never extinguished. He asserts that section 708.320, subdivision (b) indicates "the Legislature believed that the lien should remain in place until a trial court determines that a creditor is not entitled to one—meaning not entitled to one on the merits." Absent such an interpretation, Downs cautions, a judgment debtor could take advantage of procedural obstacles to "drain the LLC of funds while the procedural issues were being worked out, even though the creditor was fully entitled to a charging order."

We decline to adopt Downs' interpretation. The statutory language is straightforward, and admits of no exceptions. (See *McGroarty v. Los Angeles Unified School Dist.* (2021) 61 Cal.App.5th 258, 266 [" 'If the [statutory] language is unambiguous, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' "].)

Downs' suggested interpretation, moreover, would make it unreasonably difficult for creditors and others to determine whether a lien under section 708.320 exists or not. It is a relatively simple matter to determine whether a charging order motion has been denied. It is far more difficult, and in some cases impossible, to determine the basis of that denial, particularly for third parties uninvolved in the litigation. A

27

bright line rule is preferable, and consistent with the unambiguous language of the statute.

Downs contends that other provisions of the Code of Civil Procedure and Corporations Code state that charging orders are extinguished upon satisfaction of the judgment. He argues, "It would be inconsistent with this statutory scheme to interpret a procedural denial due to a stay to be the same as a substantive denial on the merits, or the same as a satisfaction of the underlying judgment that led to the charging order." We disagree. It is not inconsistent for different statutory sections to provide different means by which a lien might be extinguished. Regardless, the language concerning lien extinguishment in section 708.320, subdivision (b) is unambiguous, and there is no need to look for guidance from other statutory sections.

Downs cites the 1982 Law Revision Commission comments to section 708.320, which state that the provision for creation of a lien upon service of notice of a motion for a charging order "is analogous to the creation of a lien in an examination proceeding under Article 2 (commencing with section 708.110) by service of the order of examination." Downs notes that the lien created under section 708.110 lasts for one year unless extended or terminated earlier by the court. (§ 708.110, subd. (d).)

To the extent Downs is suggesting that we should read the provisions of section 708.110 into section 708.320, we see no basis in the language of either statute or the Law Revision Commission comments to do so. The only analogy the comments draw between the two statutes is that both allow for the creation of a lien upon service of notice, not that the liens have similar durations or conditions under which they may be extinguished.

28

Downs further argues that service of notice of his first charging order motion created lien priority under section 697.590, subdivision (b), which provides that "[i]n the case of a judgment lien, priority dates from the time filing is first made covering the personal property." This argument fails for two reasons. First, as we have explained, the cited section governs judgment liens on personal property created under section 697.510, not charging order liens created under section 708.320. Second, even if section 697.590, subdivision (b) did apply to this case, " 'filing' " under that statute requires filing of a notice of the judgment lien with the Secretary of State (see § 697.590, subd. (a)(1)(A)), which Downs did not do until September 2020, over a year after Glaser Weil had perfected its security interest.

Downs argues that *MDQ* supports his position that his first motion for a charging order gave him priority over Glaser Weil's security interest. *MDQ* did not involve an unsuccessful first attempt at a charging order—the trial court granted Cleopatra's motion from the outset. (*MDQ*, *supra*, 32 Cal.App.5th at p. 706.) *MDQ* did not address the circumstances under which a charging order lien is extinguished, and indeed did not cite or discuss section 708.320. *MDQ* is of no help to Downs on this issue.

Downs argues that if the automatic stay triggered by the *Rice II* appeal extinguished the lien created by his first motion for a charging order, it also barred Glaser Weil from perfecting its security interest by filing the UCC financing statement. Downs relies on section 697.040, subdivision (a), which provides, "If enforcement of the judgment is stayed on appeal by the giving of a sufficient undertaking," then "[e]xisting liens created under this

division are extinguished" and "[n]ew liens may not be created under this division during the period of the stay."

The trial court docket does not indicate any deposit or appeal bond in regard to *Rice II*, and therefore it would appear there was no "undertaking" that would trigger section 697.040, subdivision (a). Assuming arguendo Rice provided an undertaking, section 697.040 nonetheless applies only to liens "created under this division," that is, Part 2, Title 9, Division 2 of the Code of Civil Procedure. That division governs enforcement of money judgments, including, inter alia, judgment liens and charging order liens. (See §§ 697.510, 708.320.) Glaser Weil's lien is not based on a money judgment, but on a private agreement between Glaser Weil and Rice. Section 697.040 is inapplicable.

Downs argues that the charging order takes priority because it immediately entitles him to Triton's "distributable cash," whereas Glaser Weil cannot collect on its security interest absent a showing that Rice has defaulted on his debt. We note that one of the statutes Downs cites in support of this proposition provides that secured parties may take certain actions to enforce or collect on their security interests "[i]f so agreed, and in any event after default." (Com. Code, § 6907, subd. (a).) This language indicates that default is not necessarily required before a secured party may enforce a security interest if the parties have agreed otherwise. As we discuss *post* in part B.3, however, the trial court has yet to make any findings regarding the terms of Glaser Weil's security interest, including under what conditions Glaser Weil may collect on that interest and whether those conditions have been met. We leave it to the trial court to address those questions in the first instance. We express no

30

opinion as to whether Glaser Weil must establish a default before it can enforce its security interest.

### 2. There was no equitable basis to override the priority of Glaser Weil's security interest

Although the trial court acknowledged that Glaser Weil's lien priority argument was "[t]heoretically" correct, it exercised its equitable authority to place the charging order first in line. The parties dispute whether trial courts have the equitable authority to override the statutory priority of a security interest. We decline to reach that question. Assuming arguendo the trial court had such authority, there was no basis to exercise it here.

At the outset, we must reject Downs' contention that Glaser Weil acted "surreptitiously" to "jump the line in front of Downs's charging order enforcement." Glaser Weil jumped no line. At the time it obtained its security interest, there was no competing lien or charging order in place. Nor does Downs or anyone else suggest it is inappropriate for a law firm to obtain a security interest to ensure payment of its fees, assuming the firm complies with all ethical and other requirements concerning contracts with clients.

Downs argues that Glaser Weil did not notify him of the security interest, but he identifies no authority that Glaser Weil had an obligation to do so. As discussed, the law requires that a secured party perfect its interest by filing a financing statement with the Secretary of State, a rule "premised upon the assumption that the filing . . . will permit prospective purchasers and encumbrancers to ascertain the existence of security interest in the property by checking a centralized record system." (*T & O Mobile Homes, Inc. v. United California Bank* (1985) 40 Cal.3d 441, 448.) Thus Downs, like any other creditor, could look to that

31

"centralized record system" to determine if there were any competing claims to Rice's interest in Triton.

Downs suggests that it was inequitable for Glaser Weil to contest his first motion for a charging order on the basis of the stay pending appeal, then take advantage of that procedural bar to obtain its own lien ahead of his. There was no unfairness. There is no indication Glaser Weil argued for the stay for the purpose of obtaining a lien ahead of Downs. Glaser Weil was advocating on behalf of Rice, who himself had reason to defeat Downs' efforts to obtain a charging order. Glaser Weil did not obtain its security interest until a full year after the trial court denied Downs' first motion for a charging order, which further belies any suggestion that Glaser Weil's enforcement of the stay was orchestrated so Glaser Weil could obtain lien priority.[10]

More important, Downs could have, but did not, file a judgment lien or move for a charging order earlier in the litigation, which would have secured his priority over other creditors and avoided the instant dispute. The trial court entered judgment in June 2015; Downs did not move for his first charging order until April 2018, almost three years later. Even assuming arguendo the *Rice I* appeal stayed enforcement immediately after the judgment was issued, Downs could have filed a judgment lien or sought a charging order in the 14 months between the remittitur in *Rice I* and the appeal in *Rice II*, a period in which there was no appellate stay. Downs also could have sought

---

[10] We express no opinion whether it is inequitable for a law firm to argue for a stay of enforcement of a judgment against a client and shortly thereafter obtain its own lien on the client's interests. We merely note that circumstance is not present here.

32

review of the order denying his first charging order, thus potentially restoring his lien.[11]

In a similar vein, Downs argues that because Glaser Weil had actual notice of the judgment in his favor, and also had notice of the lien created by his first attempt to obtain a charging order, he is equitably entitled to lien priority. If mere notice of a judgment was sufficient to establish a judgment lien, the provision in section 697.510 requiring notice to be filed with the Secretary of State would be a nullity. Similarly, Downs' argument would render meaningless the provision in section 708.320 extinguishing a charging order lien when the underlying motion for a charging order is denied.

Downs contends it was inequitable for Glaser Weil to persuade Rice to pay the firm the $450,000 in February 2020 despite knowing of the charging order entered in October 2019. This argument presumes the payment violated the charging order. The trial court has yet to determine if Glaser Weil's first-in-time security interest entitles the firm to Rice's distributions from Triton; if the trial court so finds, then Glaser Weil did nothing wrong by accepting or even encouraging that payment.[12] For this reason, the trial court was premature to conclude that

----

[11] The automatic stay under section 916 does not apply to enforcement of money judgments "[u]nless an undertaking is given." (§ 917.1, subd. (a); see § 916, subd. (a).) As discussed, the trial court docket does not indicate any deposit or appeal bond in regard to *Rice II*.

[12] This is not to say that if the trial court ultimately concludes Glaser Weil's security interest does not entitle the firm to distributions from Triton, Glaser Weil necessarily acted inequitably. On that question we express no opinion.

33

the payment was a "windfall" to Glaser Weil in contravention of the charging order.

Downs suggests as a basis for an equitable ruling in his favor Glaser Weil's two contradictory arguments below, namely that the $450,000 payment was on the one hand Triton's payment as co-obligor, and on the other a distribution to Rice to which Glaser Weil was entitled under its security agreement. Glaser Weil did nothing inappropriate in raising these arguments. The firm asserted as its primary argument that the payments were pursuant to Triton's agreement to become co-obligor, and put forth its lien priority argument in the alternative should a court reject the first argument (as we have done here).

Downs contends Glaser Weil's actions were "clandestine" and in "bad faith" because neither Rice nor Glaser Weil informed Downs or the trial court of the competing security interest at the time Downs filed his second motion for a charging order. We do not condone Glaser Weil's failure to inform the court of the firm's security interest when Downs filed his motion. This was information the trial court certainly would have appreciated in considering and crafting a charging order. This being said, Glaser Weil's failure to disclose that information did not prejudice Downs who, as discussed, could have determined his priority through a review of the Secretary of State's records. The lack of disclosure to the trial court, therefore, is not a counterweight in Downs' favor in balancing the equities.

For similar reasons, we must disagree with the trial court's conclusion that Glaser Weil's refusal to return the money at Rice's request justified prioritizing the charging order under principles of equity. Were Rice the party seeking disgorgement, the equities between him and his former attorneys might require

34

a different balance. Here, it was Downs seeking disgorgement. Thus, the appropriate question is whether Glaser Weil's refusal to return the money was inequitable to him. Again, as we have explained, Downs' failure to obtain lien priority was not the product of Glaser Weil asserting its statutory creditor rights, but instead, the product of his own failure to obtain an earlier lien.

### 3. Remand is necessary for the trial court to determine the terms of Glaser Weil's security interest

Thus far in this Discussion we have assumed for purposes of argument that Glaser Weil's security interest entitles it to the same property that is subject to the charging order, specifically Rice's distributions from Triton. Rice and Glaser Weil offered some evidence in support of this position, namely Rice's and Cypers' declarations and the UCC financing statement. As far as we can determine, however, the trial court never made any findings in regard to that evidence. This is understandable given the trial court's ruling that the charging order took precedence under principles of equity, regardless of whatever agreements might exist between Glaser Weil, Rice, and Triton.

Given our holding that the trial court's ruling was in error, remand is necessary for the trial court to determine the terms of Glaser Weil's security interest. We express no opinion as to the scope of that inquiry, including whether the trial court may or should allow additional evidence.

## DISPOSITION

The order is reversed and the matter remanded for further proceedings consistent with this opinion.  Appellant Glaser Weil Fink Howard Avchen & Shapiro, LLC is awarded its costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.